Fecteau, J.
This matter is before the court on the Joint Motion to Dismiss or Alternatively for Summary Judgment of Defendants Massachusetts Turnpike Authority (“MTA”), F.L. Roberts & Co., Inc. (“F.L. Roberts”), Exxon Corporation (“Exxon”) and Mobil Oil Corporation (“Mobil”). Plaintiffs, Greg Zagloba and Carolyn Zagloba, commenced this action seeking recovery for personal injury, emotional distress, and property damage arising out of the alleged migration to their property of petroleum-related contaminants allegedly discovered in their neighborhood. The plaintiffs claim that the contamination originated from a gasoline service area on the Massachusetts Turnpike known as Service Area 6W in Charlton (“6W Service Area”). As both the plaintiffs and defendants have presented to the court matters outside the pleadings, the motion will be treated *415 as one for summary judgment. For the following reasons, the defendants’ motion is DENIED.
BACKGROUND
The MTA owns a gasoline service station on the westbound side of the Massachusetts Turnpike in Charlton, the 6W Service Area. At different times since 1957, Defendants F.L. Roberts & Co., Exxon and Mobil have leased, and/or operated and/or supplied motor fuel to the gasoline service station at the 6W Service Area. Specifically, from 1957 to 1982, Exxon leased the 6W Service Area. From approximately 1982 to 1990, F.L. Roberts leased the 6W Service Area and Exxon supplied petroleum products to F.L. Roberts for sale. From approximately 1990 to present, Mobil has leased the 6W Service Area.
From March 1988 to March 1998, plaintiffs owned 14 Timber Heights Drive, which is located north of the 6W Service Area in a residential area of Charlton known as Timber Valley Estates.
In 1990, the MTA engaged Rizzo Associates, Inc., (“Rizzo”) an environmental engineering consulting firm, to conduct an environmental assessment of the 6W Service Area to attempt to identify and remediate any past releases of oil and/or hazardous material to the soil and groundwater. In connection therewith, Rizzo identified contamination in the soil and groundwater at the 6W Service Area. As a precautionary measure, the Massachusetts Department of Environmental Protection, in June 1990, directed the MTA to obtain samples of well water from residential properties located within a radius of slightly more than one-half mile of the 6W Service Area.
In September and October 1990, Rizzo obtained samples from over 100 water wells located on properties near the 6W Service Area, including the water well located at plaintiffs’ former property. In November and December of 1990, samples were again collected from certain water wells previously tested, including plaintiffs’ former property. The water samples obtained from plaintiffs’ former property were taken to a laboratory and analyzed for chemicals and compounds associated with gasoline, such as benzene, toluene and methyl tert butyl ether (“MTBE”), among various other chemicals and compounds. None of the laboratory analyses of those samples detected any kind of contaminant related to any type of petroleum product or otherwise attributable to any release at the 6W Service Area.
Further water samples were collected from plaintiffs’ former properly periodically between 1990 and February 1995. The laboratory analysis of these samples did not detect any kind of contaminant. In sum, between 1990 and February 1995 plaintiffs’ former property was tested 18 times and on no occasion was any kind of petroleum related contaminant found present.
Petroleum related compounds have since been detected in the water supply wells of the following properties within 750 feet of the Zagloba property:
19-C-4 (MTA): 19-C-5 (Burlingame); 19-C-9; 19-C-ll. 13 (Curran); 19-C-ll. 14 (Splane); 19-C-ll. 15 (Carbonneau); 19-C-ll.18 (McCarthy/Robbie): 19-C-ll.2 (Sherman); 19-C-11.24 (Patrick Scavone); 19-C-ll.26 (Seaman); 19-C-ll.27 (Charles Scavone); and 19-C-ll.28 (Mulcahy); 19-C-ll.4 (Gline); 19-C-l 1.12 (Fifield); 19-C-11.6 (Taylor); and 19-C-11.9 (Timothy Scavone).
In 1996, plaintiffs’ former property was connected to a municipal water supply system at no cost to plaintiffs. In August 1998, the plaintiffs’ former property was transferred to Spencer Savings Bank through foreclosure. The property was thereafter transferred by Spencer Savings Bank to a third party.
DISCUSSION
To prevail on summary judgment, the moving party must establish that there is no genuine issue of material fact on every element of a claim and that it is entitled to judgment on that claim as a matter of law. See generally Mass.R.Civ.P. 56(c); Highlands Insurance Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party has established the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
A party moving for summary judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its “pleadings and mere assertions of disputed facts . . .” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, the non-moving party must respond by alleging specific facts demonstrating the existence of a genuine issue of material fact. Pederson v. Time, Inc., supra at 17.
The dispute between the parties to this case is whether the plaintiffs have a reasonable expectation of proving actual contamination to their property. “General Laws c. 21E, §5(a)(iii) [a provision of the Massachusetts Oil and Hazardous Material Release Prevention Act], provides a property owner with a strict liability claim against certain classes of persons for ‘damage to his real or personal property incurred or suffered as a result of [a] release or threat of release’ of hazardous materials.” Guaranty-First Trust Co. v. Textron, 416 Mass. 332, 334 (1993). The Appeals Court decided a similar case under Rule 1:28.[2]
*416 In Scavone v. Massachusetts Turnpike Authority and others[3] (and three consolidated cases),[4] No. 95-P-1927 (App.Ct. December 1997), the Appeals Court affirmed the dismissal of three similar actions because the plaintiffs could not demonstrate the presence of actual contamination of their property or water supply. In doing so, the court stated: “(ajbsent proof of actual contamination of their property or water supply from the release of hazardous materials and the resultant damage to their property or the incurring of response costs as a result of the threat of release of hazardous materials, the plaintiffs’ common-law claims and statutory claim under G.L. 21E, §5, are barred.” Id. at 3, citing Gareth v. Boston Edison Co., 415 Mass. 303, 305-08 (1993), and Guaranty-First Trust Co., supra at 335-38.
Although the court affirmed the judgments in the three consolidated cases, it reversed the judgment in the action commenced by Patrick Scavone. Scavone, supra at 2.
Scavone owned two different parcels of property in the Timber Valley Estates. Id. Specifically, he owned Lot #1 on Timber Valley Road and his residence at 3 Timber Heights Drive. Id. Scavone sought recoveiy for personal injury and property damage allegedly arising out of the migration of petroleum related contaminants to their neighborhood and water supply from the 6W Service Area. Id. In the Scavone matter, as is the case here, testing data showed the absence of any petroleum contaminants in the claiming parties’ water supply wells. Id. The Appeals Court found the presence of material issues of fact, however, regarding his claims that both parcels of his land were contaminated. Id.
Specifically, as to Lot #1, Scavone submitted evidence that the water supply contained MTBE at a concentration of 3.8 parts per billion and that the likely source of the contaminant was the 6W Service Area. Id. The court also noted his deposition testimony that the lot was unsellable because of the contamination. Id. Based on this evidence, the court found that Scavone could recover for physical damage suffered by him from the presence of the contaminants. Id.
As to his residence, Scavone submitted deposition testimony and an expert affidavit. Id. at 2-3. In his deposition, Scavone testified that he had detected oily residue on his clothes after they had been laundered with well water and that there are days when “you could run your lawn mower with [the well water].” Id. The expert affidavit cited the likely source of the pollutants as the 6W Service Area. Id. at 3. Based on that evidence, the court concluded summary judgment was precluded on his statutory claim, his common law claims, and his claim for intentional and negligent emotional distress. Id.
In the present action, as in Scavone, supra, the Zaglobas submit deposition testimony and an expert affidavit. The expert affidavit acknowledges the absence of any analytic data confirming the presence of contamination. Rather, the expert testifies that “the Zagloba property, 14 Timber Valley Drive, Charlton, Massachusetts, more likely than not, contains petroleum contaminants which have migrated and continue to migrate to the present day from the [6W Service Area]’’ (emphasis added). This Court does not find the expert testimony persuasive as it fails to offer anything other than conclusory opinions. Therefore, the expert affidavit, standing alone, does not demonstrate a material issue of fact. Carolyn Zagloba’s affidavit, however, does offer proof of actual contamination, and therefore, summary judgment must be precluded in this case.
Specifically, the plaintiff, Carolyn Zagloba, has smelled petroleum contaminants while using her water supply which is similar to Patrick Scavone’s testimony that he smelled petroleum products and had oily residue on his clothing. In Scavone, the Appeals Court noted that Scavone’s statements were not impermissible opinion evidence, citing Commonwealth v. Sturtivant, 117 Mass. 122, 132-38 (1875), and concluded that the plaintiff had demonstrated that material issues of fact existed which precluded summary judgment. Scavone, supra at 3. Likewise, I conclude that Carolyn Zagloba’s statement coupled with the portion of the expert affidavit pointing to the 6W Service Area as the likely source of pollutants, is enough to meet the plaintiffs’ burden of demonstrating the existence of a genuine issue of material fact.
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment of Defendants Massachusetts Turnpike Authority, F.L. Roberts & Co., Inc., Exxon Corporation and Mobil Oil Corporation is DENIED.

Rule 1:28 of the Massachusetts Appeals Court Rules for the Regulation of Appellate Practice allows for a summary disposition by a panel of justices. The precedential value of this opinion has been addressed. In Mark J. Horner v. Boston Edison Company, 45 Mass.App.Ct. 139 (1998), the Appeals Court declined to consider as precedent an unpublished opinion decided pursuant to Rule 1:28. 45 Mass.App.Ct. at 140. The court stated, “we have never suggested that summary decisions of this court issued pursuant to Rule 1:28 may be relied upon or cited as authority in other cases. In fact, we reached the opposite conclusion in at least two other cases.” Id. The court did note, however, that they had left open the possibility that a summary decision could be cited as precedent in a “related" case, although they have had no occasion to do so. Id. at 140-4; see Purvis v. Commissioner of Correction, 29 Mass.App.Ct. 190-92 n. 5 (1990) (court would not rely on a Rule 1:28 decision “[wjithout assessing any similarities and differences between that case and the present one"). The matter at hand is such an occasion as the Rule 1:28 decision cited and the case at hand are different only with respect to the plaintiff. Therefore, Horner and Purvis support my reliance on the unpublished decision of Scavone.

F.L. Roberts & Co., Inc., Exxon Corporation, and Mobil Corporation.

Philip L. Scavone & another v. Massachusetts Turnpike Authority & others; William C. Robbie & another v. Massachusetts Turnpike Authority & others; John L. Cook & another v. Massachusetts Turnpike Authority & others.